**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ORIE ANDERSON, | ) | CASE NO. 1:11-CV-1685 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| KEITH SMITH, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Orie Anderson ("Anderson"), challenges the constitutionality of his conviction in the case of *State v. Anderson*, Cuyahoga County Court of Common Pleas Case No. CR 504304.  Anderson, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on August 12, 2011.  On January 3, 2012, Warden Keith Smith ("Respondent") filed his Answer/Return of Writ.  (ECF No. 10.)  Anderson, despite asking for an extension to do so, did not file a Traverse.  (ECF No. 12.)  For reasons set forth in detail below, it is recommended that Anderson's petition be DENIED.

**I.  Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Anderson's conviction as follows:

[*P10] The jury heard the following evidence at trial. On the afternoon of November 5, 2007, Anderson had been gambling with four to six others outside Sunlight Food Mart, a convenience store located in Cleveland. [Tr. 231]. Alonzo Tate ("Tate") testified that Anderson drove away in a silver or gray Chevrolet HHR vehicle with Illinois license plates. [Tr. 232-33]. Anderson later returned to the area near the store. [Tr. 234]. After Tate purchased marijuana from an individual on the street, he observed Thomas standing outside the store. [Tr. 234-36]. Tate then walked across the street and approached an acquaintance to share the marijuana he had just purchased. [Tr. 237]. Suddenly, Tate heard two shots fired in quick succession and saw Thomas fall to the ground as Anderson drove away in the Chevrolet HHR. [Tr. 237-38]. Tate testified that Thomas and Anderson were the only ones in the area when Thomas was shot. [Tr. 238-39]. Tate approached Thomas and observed he had been shot in the head. [Tr. 255].

[*P11] That same afternoon, Nael El Khatib ("El Khatib"), had been working at the store. [Tr. 351]. He testified that Anderson came into the store, and Thomas followed him, walking very quickly as if he were angry, and accused Anderson of saying something about his mother. [Tr. 355-56]. Anderson looked Thomas up and down and asked if he had a "piece." [Tr. 356]. Thomas exited the store without answering. [Tr. 357]. Seconds later, Anderson left the store. [Id.] El Khatib heard two shots in quick succession. [Tr. 358]. He looked outside and saw Thomas on the ground, bleeding from the back of his head. [Tr. 360-61]. He watched Anderson drive away in what appeared to be a PT Cruiser. [Tr. 362]. When questioned by police, El Khatib denied having seen anything because he feared retaliation. [Tr. 364].

[*P12] Several neighborhood residents also heard the gunshots. Brenda Patterson ("Patterson") lived across the street from the store. [Tr. 331]. She and another neighbor heard several gunshots in rapid succession. [Tr. 336]. Upon looking out the window, they observed people gathered around the store and a body lying on the ground. [Tr. 337-38]. Patterson went downstairs and saw that Thomas had been shot in the back of the head. [Tr. 339]. Marvin Jarman testified that he had been visiting across the street from the store. [Tr. 399]. He heard an argument and gunshots fired in rapid succession, so he called 911. [Tr. 400].

[*P13] Shortly after the shooting, Cleveland police arrived on the scene and called for medical transport for Thomas. [Tr. 421-24]. Tate informed police that Anderson had shot Thomas and driven away in a silver Chevrolet HHR with Illinois license plates. [Tr. 256]. Further investigation revealed that Thomas had sustained bullet wounds to the back of his head and arm, and had been shot from at least four feet away. [Tr. 472, 481; 681-84].

[*P14] Police received an anonymous tip leading them to the home of Anderson's girlfriend, Shana Blanchard ("Shana"). [Tr. 454-56]. Officers found the silver Chevrolet HHR parked behind the house, hidden from view on the street. Andria

Blanchard, Shana's mother, testified that she had rented the silver Chevrolet HHR for Anderson.  [Tr. 497, 454-56]  A few days before the shooting, Anderson promised to return the vehicle on November 5.  [Tr. 501].  He failed to do so, later explaining that he had been afraid.  [Tr. 506].  Later, police investigators examined the silver Chevrolet HHR and collected fingerprints and personal belongings. Anderson stipulated that the fingerprints from the rearview mirror were his.  [Tr. 411-416].

[*P15] The day after the shooting, Tate provided a written statement to police indicating that Anderson had shot Thomas.  [Tr. 257].  He also identified Anderson from a photo array.  [Tr. 261-62].  During trial, Tate admitted that he went to Anderson's attorney, Harvey Bruner ("Bruner"), and signed a statement declaring that he had not observed the shooting or any homicide.  [Tr. 260].

[*P16] After the shooting, law enforcement officials searched for Anderson. On January 2, 2008, Milwaukee police officer Scott Siller ("Siller") and FBI agent Patrick Boland ("Boland") went to Anderson's sister's house in Milwaukee, where Anderson surrendered to police.  [Tr. 539].  Anderson told Siller that a man had approached him, and because Anderson believed the man was going to kill him, Anderson shot him.  [Tr. 543].

[*P17] Boland also interviewed Anderson at length [Tr. 581], and the jury heard a recording of that interview.  During the interview, Anderson informed Boland that he had parked a Chevrolet HHR behind Shana's house and then fled the city.  [Tr. 595].  When Boland asked Anderson if he had seen Thomas die, Anderson broke eye contact, paused for a long time, and refused to answer the question.  [Tr. 585, Tr. 597-612].  Anderson then began discussing self-defense laws in Ohio and asked Boland what he would have done if another person had approached him in a threatening manner with a gun.  [Tr. 600-05.]

[*P18] After Boland's interview, law enforcement officers transported Anderson to Cleveland, where Detectives Raymond Diaz ("Det. Diaz") and Ignatius Sowa interviewed him.  Anderson told them that he had been the happiest person in the world on November 4; on November 5, in a split second, his life had changed; and on November 6, he was a fugitive from justice with 40,000 police searching for him.  [Tr. 752, 803].  He also asked them why the police took so long to get to the crime scene on the day of the crime and what kind of evidence the police had. [Tr. 799].  Anderson asked them if he could retrieve his property from the silver Chevrolet HHR. [Tr. 805].

[*P19] After his arrest, Anderson was held in the Cuyahoga County Jail and shared a pod with Dante Mitchell ("Mitchell"). Mitchell testified that on several occasions, Anderson had admitted shooting Thomas.  [Tr. 646-47].

-3-

*State v. Anderson*, 2010-Ohio-66, at ¶¶10-19,  2010 Ohio App. LEXIS 53 (Ohio Ct. App., Jan. 14, 2010) (citations to the Trial Transcript added by Respondent).

## II.  Procedural History

### A.    Conviction

In September of 2007, a Cuyahoga County Grand Jury charged Anderson with one count of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A) together with two firearm specifications, and one count of having a weapon while under disability in violation of O.R.C. § 2923.13(A)(2).  (ECF No. 10, Exh. 1.)  On November 10, 2008, a jury found Anderson  guilty of the lesser included offense of murder, the two firearm specifications, and having a weapon while under disability.  (ECF No. 10, Exh. 2.)  On November 14, 2008, the trial court sentenced Anderson to an aggregate prison term of eighteen years to life.  (ECF No. 10, Exh. 3.)

### B.    Direct Appeal

On May 18, 2009, Anderson, through new counsel, filed a brief with the Court of Appeals for the Eighth Appellate District ("state appellate court"), raising the following assignments of error:

1. The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against Appellant.

2. Appellant's convictions are against the manifest weight of the evidence.

3. Appellant was denied a fair trial by the improper questions by the prosecutor and the detective's improper comments while testifying.

4. Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United States Constitution.

-4-

(ECF No. 10, Exh. 5.)

On January 14, 2010, Anderson's conviction was affirmed.  (ECF No. 10, Exh. 7.)

On March 5, 2010, Anderson filed a Motion for Leave to File a Delayed Appeal with the Supreme Court of Ohio, which was granted.  (ECF No. 10, Exhs. 8, 9 & 10.)  Anderson raised the following propositions of law:

I.    The Trial Court and the Court of Appeals erred in denying Appellant's Motion for Acquittal as to the charges when the State failed to present sufficient evidence against Appellant.  Violation of the Due Process Clause of the United States Constitution and Ohio.

II.    The Court of Appeals committed an error of law when Appellant was denied a fair trial by the improper questions by the prosecutor and the detective's and FBI Agent's improper comments while testifying.  Violated the United States Constitution and Ohio.

III.    The Court of Appeals committed an Error of Law when Appellant was denied Effective Assistance of Counsel as Guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United State Constitution.

(ECF No. 10-1, Exh. 11.)

On August 25, 2010, the appeal was dismissed as not involving any substantial constitutional question.  (ECF No. 10-1, Exh. 12.)

**C.    Application to Reopen Appeal**

On April 12, 2010, Anderson, *pro se*, filed an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B) arguing that appellate counsel was ineffective for failing to raise a speedy trial claim.  (ECF No. 10-1, Exh. 13.)

On August 16, 2010, the application was denied.  (ECF No. 10-1, Exh. 15.)  No appeal was filed from this decision.

**D.    Federal Habeas Petition**

On August 12, 2011, Anderson filed a Petition for Writ of Habeas Corpus and asserted

the following grounds for relief:

> GROUND ONE: Denying Appellant's Motion for Acquittal.
>
> Supporting Facts: The State failed to present sufficient evidence against Appellant as to Aggravated Murder on which he was indicted.  There is no evidence to show that Appellant was involved in the crime.  further more their was no direct testimony linking Appellant to the actual homicide.  The only witness (Alonzo tate) that even placed Appellant at the scene, also made two completely different statement!
>
> GROUND TWO: Appellants conviction was against the manifest weight of the evidence.
>
> Supporting Facts:  The Jury simply lost its way as to the Conviction.  The evidence is clearly lacking that Appellant is guilty of the crimes charged herein.  Again where is the direct link between Appellant's purported actions in this case and the *mens rea* to commit Murder? it simply is not there!
>
> GROUND THREE: Improper questions and Comments by the prosecutor and the detectives while testifying.
>
> Supporting Facts: The prosecutor on numerous occasions tried to elicit opinion testimony from Special Agent Boland and Detective Diaz.  Boland was permitted to give his opinion and elaborate on Appellant's statement.  Detective Diaz was permitted to indicate that he doesn't believe Appellant was being truthful. The state conduct through this testimony was improper, egregious and prejudicial!
>
> GROUND FOUR: Denied effective assistance of Counsel.
>
> Supporting Facts: The defense failed to have a jury waiver as to having weapons while under disability count as to prevent the jury from hearing about Appellant's prior conviction.  Secondly the defense allowed the jury to hear Appellant's prior criminal history and the fact that he was on parole.  These actions and omissions cannot be viewed as strategy and falls below the acceptable standards of conduct! It deprived Appellant of a fair trial!

(ECF No. 1) (*errata* in original).

-6-

### III.  Exhaustion and Procedural Default

**A.     Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.     Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate

-7-

grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely

---

[1]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A

petitioner can take four actions in his brief which are significant to the determination as to

whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon

federal cases employing constitutional analysis; (2) reliance upon state cases employing federal

constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms

sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts

well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir.

2003).

  A petitioner's procedural default, however, may be excused upon a showing of "cause"

for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at

138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense

impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434

F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with

constitutional error."  *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence

supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See*

*United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th

Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless

petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been

different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*,

527 U.S. 263, 289 (1999)).

  Finally, a petitioner's procedural default may also be excused where a petitioner is

actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Parker v. Matthews,* 567 U.S. –, 2012 WL 2076341, *6 (U.S. Jun. 1, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and

-10-

standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* – S.Ct. –, 2012 WL 508160 (U.S. Jun. 11, 2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state courts decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks

-11-

omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87.  This is a very high standard, which the Court readily acknowledges.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.").

**A.  Grounds One and Two: Sufficiency and Manifest Weight of the Evidence**

In ground one of the petition, Anderson argues that his conviction was not supported by sufficient evidence and that the trial court should have granted his Motion to Dismiss made pursuant to Ohio Criminal Rule 29.  (ECF No. 1.)  In ground two, Anderson asserts that his conviction was against the manifest weight of the evidence.  *Id.*  Manifest weight claims are not cognizable on federal habeas review.[2]  *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir.

---

[2]    As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess*, 2006 WL 2090093 at *7 (*quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983).  Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an

2006); *accord Hess v. Eberlin*, 2006 WL 2090093 at *6 (S.D. Ohio 2006).  Therefore, ground two cannot be considered.

The Due Process clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)  The state appellate court, after reviewing the evidence presented to the jury, addressed this claim as follows:

> Sufficiency and Manifest Weight of the Evidence
>
> [*P4]  In the first assignment of error, Anderson claims that the evidence is insufficient to sustain his convictions.  He argues that there is no direct testimony linking him to Thomas's murder and that some of the witnesses who testified against him were biased.  In the second assignment of error, he claims that his

exhaustive review," this Court cannot consider whether Anderson's conviction was against the manifest weight of the evidence.  *Id*.

convictions are against the manifest [**3] weight of the evidence. We address
these two assignments of error together because, although the standards of review
differ, they involve the same evidence.

[*P5]  In *State v. Diar*, 120 Ohio St.3d 460, 2008 Ohio 6266, 900 N.E.2d 565,
P113, the Ohio Supreme Court explained the standard for sufficiency:

[*P6]  "Raising the question of whether the evidence is legally sufficient to
support the jury verdict as a matter of law invokes a due process concern. *State v.
Thompkins* (1997), 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541.  In
reviewing such a challenge, '[t]he relevant inquiry is whether, after viewing the
evidence in a light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime proven beyond a reasonable
doubt.' *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two
of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct.
2781, 61 L.Ed.2d 560."

[*P7]  The Ohio Supreme Court restated the criminal manifest weight standard
and explained how it differs from the sufficiency standard in *State v. Wilson*, 113
Ohio St.3d 382, 2007 Ohio 2202, 865 N.E.2d 1264, P25:

[*P8]  "The criminal manifest-weight-of-the-evidence standard was [**4]
explained in * * * *Thompkins* * * *, [in which] the court distinguished between
sufficiency of the evidence and manifest weight of the evidence, finding that these
concepts differ both qualitatively and quantitatively. *Id*. at 386, 678 N.E.2d 541.
The court held that sufficiency of the evidence is a test of adequacy as to whether
the evidence is legally sufficient to support a verdict as a matter of law, but
weight of the evidence addresses the evidence's effect of inducing belief.  *Id*. at
386-387, 678 N.E.2d 541.  In other words, a reviewing court asks whose evidence
is more persuasive -- the state's or the defendant's?  We went on to hold that
although there may be sufficient evidence to support a judgment, it could
nevertheless be against the manifest weight of the evidence.  *Id*. at 387, 678
N.E.2d 541.  'When a court of appeals reverses a judgment of a trial court on the
basis that the verdict is against the weight of the evidence, the appellate court sits
as a 'thirteenth juror' and disagrees with the factfinder's resolution of the
conflicting testimony.' *Id*. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982),
457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."

***

[*P20] In the instant case, the evidence was sufficient to convict Anderson of
murder and having a weapon under disability.  We also find that the convictions
were not against the manifest weight of the evidence.  The State presented
evidence and the jury properly found that Anderson purposely killed Thomas, and

-14-

that Anderson had carried a weapon while under disability.  On appeal, Anderson argues that there is little direct evidence that he killed Thomas. But circumstantial and direct evidence have the same probative value.  *Jenks*, 61 Ohio St.3d at 259, paragraph one of the syllabus.

[*P21] In the instant case, El Khatib testified that just before the murder, Anderson and Thomas had a heated argument in the store. During the argument, Anderson asked Thomas if he had "a piece," which is a common term for a weapon, and then the two proceeded outside. Several witnesses in the neighborhood testified to hearing two shots around 4:00 p.m. on November 5. Tate testified that immediately after the shots were fired, the only individuals in the immediate vicinity were Anderson and Thomas, and Thomas had been shot.

[*P22] On the day of the shooting, Anderson was seen driving a silver Chevrolet HHR, which witnesses observed parked outside the store. Investigators found Anderson's personal belongings and fingerprints in the vehicle, which Anderson admitted he had abandoned behind his girlfriend's house.  [Tr. 595].  After the murder, Anderson fled Cleveland.  [Tr. 539-542].  He confessed to both Siller and Mitchell that he had shot Thomas.  [Tr. 543, 646-47].  He also revealed in interviews with Siller and Boland that he had researched the law of self-defense. [Tr. 543, 605].  He admitted that his life had changed for the worse on November 5, the day of the murder.  These facts demonstrate that Anderson murdered Thomas.

[*P23]  Anderson also challenges the credibility of the State's witnesses.  He argues that on the day of the murder, Tate was abusing drugs, that Tate had seven prior criminal convictions, and that Tate admitted to attorney Bruner that he had not actually seen the murder.  But Tate testified that he had not smoked marijuana that day until after the shooting.  Moreover, the jury knew of Tate's prior convictions and assessed his credibility accordingly.  Also, Tate explained that he had signed a statement indicating that he had not witnessed the murder because he had been confused by the wording of the statement.  Though he did not see Anderson shoot Thomas, he heard the shots fired and observed Anderson immediately after the shooting.

[*P24]  Next, Anderson challenges El Khatib's credibility.  He argues that El Khatib had a prior conviction, agreed to testify only one week before the trial, and testified in exchange for the prosecutor's sending a "cooperation letter" to the Department of Justice.  But the jury knew of his 1996 conviction for attempted involuntary manslaughter.  Additionally, El Khatib testified that he had been informed that the "cooperation letter" would not help much in his pending federal case.  Anderson also argues that immediately after the murder, El Khatib told police that he had not seen or heard anything. But El Khatib claimed that he feared retaliation.

-15-

[*P25]  Even if these two witnesses were not credible, the State presented
substantial evidence to show that Anderson murdered Thomas. The State also
demonstrated that Anderson possessed a weapon while under disability. Anderson
argues that no witness could place a gun in his hand, but he admitted to Siller,
Boland, and Mitchell that he had shot Thomas.  And Anderson stipulated to his
prior convictions, which established that he was "under disability" when he shot
Thomas.

[*P26]  On appeal, Anderson argues that he shot Thomas in self-defense, but he
failed to raise this argument below or present evidence establishing self-defense.
Therefore, he has not preserved this issue for our review, and we decline to
consider it.

[*P27]  Based on the evidence before us, Anderson's convictions are supported
by sufficient evidence and are not against the manifest weight of the evidence.
We, therefore, overrule the first two assignments of error.

*Anderson*, 2010-Ohio-66 at ¶¶20-27.

The state appellate court identified the correct standard for sufficiency of the evidence

claims.  While the decision was not an unreasonable determination of the facts in light of the

evidence presented, this Court has conducted its own independent review.  The state appellate

court accurately summarized the testimony of record.  Anderson's belief, that because nobody

actually saw him fire the gun his conviction is unsupportable, is mistaken.  Based on the

testimony of Detective Siller, Anderson actually admitted to shooting the victim.  (Tr. 537, 543.)

Special Agent Boland testified that Anderson, while not directly admitting that he shot the

victim, appeared to claim self-defense.  (Tr. 605.)  His jail cell mate, Dante Mitchell, also

testified that Anderson admitted shooting the victim.  (Tr. 646-48.)  Furthermore, the

circumstantial evidence of record – the testimony of Tate, Blanchard, and El Khatib –

corroborate Anderson's admission and support the convictions.  As correctly found by the state

appellate court, "[i]n assessing the proof, a court may sustain a conviction based upon nothing

more than circumstantial evidence."  *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010)

-16-

(*citing See United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)).  In addition, "circumstantial evidence and direct evidence are accorded the same weight . . . ."  *United States v. Harris*, 2011 U.S. App. LEXIS 22278 (6th Cir., Nov. 1, 2011) (*quoting United States v. Sherlin*, 67 F.3d 1208, 1214 (6th Cir. 1995) (citation omitted)).  The state appellate court also accurately observed that Anderson presented no evidence that he acted in self-defense.  As such, Anderson's argument – that no witness actually testified to seeing him with a gun – is unavailing.

**B.  Ground Three: Prosecutorial Misconduct**

In ground three of his petition, Anderson asserts that the prosecution posed improper questions to Agent Boland and Detective Diaz, who, in turn, gave their opinions or elaborated on Anderson's recorded statement, resulting in an unfair trial.  (ECF No. 1.)

To reach a constitutional violation, a prosecutor's misconduct must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).  The Sixth Circuit has stated that a court should perform a two-step test to determine whether a prosecutor's inappropriate statements warrant a reversal.  *See United States v. DeJohn*, 368 F.3d 533, 548 (6th Cir. 2004); *United States v. Carroll*, 26 F.3d 1380, 1384-87 (6th Cir. 1994).  First, a court must determine whether a prosecutor's statements were improper followed by a second determination as to whether the impropriety constitutes reversible error.  *DeJohn*, 368 F.3d at 548.  The following four factors are used to determine whether reversal is necessary: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence

-17-

against the accused." *Id.*, *quoting Carroll*, 26 F.3d at 1385.  Further, prosecutorial misconduct

claims are subject to harmless error analysis.  *See Bates v. Bell*, 402 F.3d 635, 642 (6th Cir.

2006). ("An error is found to be harmless unless it 'had substantial and injurious effect or

influence in determining the jury's verdict.'") (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 638

(1993)).

The state appellate court did not address Anderson's claim as raising prosecutorial

misconduct, but rather whether evidence was improperly admitted at trial.[3]  Anderson's habeas

petition provides no specific examples of the alleged misconduct.  However, his supporting facts

focus upon the testimony of Agent Boland and Detective Diaz.  In his appellate brief, Anderson

identified four specific questions/comments his trial counsel objected to during the testimony of

Agent Boland, and three objectionable questions during the testimony of Detective Diaz.  (ECF

No. 10-1, Exh. 5 at 23-25.)

With respect to the challenged questions/comments made by the prosecution during the

direct testimony of Agent Boland, the state appellate court found as follows:

> [*P32]  The trial court sustained objections to the portions of Boland's testimony
> that Anderson challenges on appeal and, at one point, admonished the jury not to
> consider the excluded evidence.  And we presume that juries follow the trial
> court's instructions.  *State v. Hancock*, 108 Ohio St.3d 57, 2006 Ohio 160, 840
> N.E.2d 1032, ¶86, citing *State v. Fears* (1999), 86 Ohio St.3d 329, 334, 1999
> Ohio 111, 715 N.E.2d 136.  Therefore, we examine only the portions of Det.
> Diaz's testimony that Anderson challenges for which the trial court did not
> sustain objections.

*Anderson*, 2010-Ohio-66 at ¶32.  Based on Anderson's own citations to the transcript in his brief,

---

[3]  Anderson's appellate brief is rather ambiguous as to whether he was raising an error of
state evidentiary law when he argued that he was deprived of a fair trial.  (ECF No. 10-1,
Exh. 5.)

the appellate court was correct that the trial court *sustained* all four of defense counsel's objections during Agent Boland's testimony. (ECF No. 10-1, Exh 5, citing Tr. 597-605.) Moreover, there is nothing unreasonable about the appellate court's decision, as "jurors are presumed to follow the law as stated by the court and to follow the court's instructions." *Shaw v. Bell*, 2009 U.S. Dist. LEXIS 45288 at *24 (E.D. Mich. May 29, 2009), *citing Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions"); *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Therefore, assuming *arguendo* that the prosecution's questions and/or statements improperly elicited inadmissible testimony, any error was harmless as the jury is presumed to have followed the court's instruction to disregard.

With respect to the challenged questions/comments made by the prosecution during the direct testimony of Detective Diaz, the state appellate court found as follows:

> .... Therefore, we examine only the portions of Det. Diaz's testimony that Anderson challenges for which the trial court did not sustain objections. That testimony included the following:
>
>> Prosecutor: "[referring to the audio recording of Boland's interview of Anderson] Then he starts to give facts, he starts to give details about what he was on parole for, the facts of his case. Now, the facts that he gives yes, I'm on parole, I had a case, I was 17 and a half, just being young and dumb. A dude I didn't like, I climbed into his window, you know what I'm saying, probably just to scare him. Spray paint on his wall, being stupid. Just being a teen. Do you know if those facts comport to the actual case?"
>>
>> Mr. Bruner: "Objection."
>>
>> The Court: "Overruled. Do you know?"
>>
>> Diaz: "I do know for a fact they are not the truth because I have read the police report."
>>
>> Prosecutor: "So he is not telling the truth there, is he?"
>>
>> Diaz: "No, he is not."

-19-

* *

Prosecutor: "The facts as Orie Anderson relate [sic] them on that tape are not correct, isn't that correct?"

Diaz: "That is correct."

Prosecutor: "Orie states he's been to prison for four years, is that true or not?"

Mr. Bruner: "Objection."

The Court: "Overruled."

Diaz: "That is true."

Prosecutor: "And Orie states it took police 20 minutes to get to Tony Thomas's body on that date.  Is that true or false?"

Diaz: "That is what he told us.  False."

Prosecutor: "So you would agree with me that there are things that are true, and things that are false."

Diaz: "Correct."

* *

Prosecutor: "Same kind of theme that he had with the FBI on the tape, there was somebody out there that didn't have anything to do with this.  I want to make sure everybody knows he had nothing to do with this?"

Diaz: "Correct."

Prosecutor: "That's the fourth time you asked him a direct question?"

Diaz: "Yes."

Prosecutor: "Did he answer you this time?"

Diaz: "[reading from the police report regarding Diaz's interview of Anderson] 'Anderson then states that he is not going to talk with us about this without his attorney.  And Anderson states that he would like us to tell Tony's sister he's sorry for her loss.  And Anderson states he has court in

the morning.  He would speak with his attorney.'  At this time we ended our conversation."

[*P33]  In the relevant exchanges, Det. Diaz opined that Anderson had not been truthful in the interview.  Anderson argues that the State was permitted to discredit his testimony.  We note, however, that Anderson did not testify, so this argument has no merit.

[*P34]  However, we questions [sic] whether the testimony properly falls within Evid.R. 701, because the testimony did not help the jury to determine a fact in issue.  Some of the testimony was cumulative and some was irrelevant to proving aggravated murder and having a weapon under disability, the crimes with which Anderson had been charged.  For instance, Anderson stipulated to the prior conviction that placed him "under disability" for purposes of possessing a weapon, so the testimony about his prior case was cumulative.  Additionally, the length of time police took to arrive at the scene of the crime did not tend to prove any of the elements of the crimes in question, so it was irrelevant.  Anderson did not object to the last portion of the cited testimony, so we decline to address it on appeal.

[*P35]  Arguably, the trial court should have excluded at least some of the challenged testimony.  But we do not find that the trial court abused its discretion in admitting the evidence or that the result of the trial would have been different if the evidence had been excluded.  Therefore, we overrule the third assignment  of error.

*Anderson*, 2010-Ohio-66 at ¶¶32-P35 (footnotes omitted).

Essentially, the appellate court found that any error was harmless because the witnesses' comments (1) pertained to Anderson's previous convictions which he had already stipulated to, or (2) related to an irrelevant fact – the response time of the police to the shooting – which had no bearing on the determination of Anderson's guilt.  Anderson did not file a traverse and has not made any argument as to how the state court's decision was tantamount to an objectively unreasonable application of federal law.[4]  More importantly, the AEDPA standard generally

---

[4]  "Federal courts often liberally construe the post-judgment filings of *pro se* criminal defendants for efficiency's sake and out of a sense of fairness to pro se petitioners." *United States v. Kirkpatrick*, 2009 U.S. Dist. LEXIS 77248 (E.D. Tenn. Aug. 28, 2009)

requires this Court to defer to state courts even if fairminded jurists could disagree on the correctness of the decision.  The Court finds nothing objectively unreasonable or incorrect in these findings.  The complained of conduct simply did not have a substantial or injurious effect on the outcome of the case.

**C.  Ground Four: Ineffective Assistance of Trial Counsel**

In his final ground for relief, Anderson argues that trial counsel was ineffective because he did not object to testimony concerning Anderson's prior convictions or testimony indicating Anderson  was on parole.  (ECF No. 1.)

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that

---

(*quoting United States v. McDonald*, 326 Fed. Appx. 880 (6th Cir. 2009) (internal quotation marks omitted).  Nonetheless, it is not this Court's function to find law to support Anderson's conclusory and undeveloped "argument."  *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (citations omitted).

defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d

222, 229 (6ᵗʰ Cir. 1992).  "[C]ounsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional judgment."

*Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies

employed by counsel are not enough to support a claim of ineffective assistance of counsel and

there is a presumption that the challenged conduct of a petitioner's counsel was a matter of

strategy.  *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6ᵗʰ Cir. 1990).

The state appellate court addressed this argument as follows:

Ineffective Assistance of Counsel

[*P36]  In the fourth and final assignment of error, Anderson argues that his trial
counsel was ineffective because counsel (1) failed to request severance of the
weapons-under-disability charge, and (2) failed to prevent the jury from hearing
evidence of his prior criminal history.  We cannot conclude that trial counsel's
failure to make such objections changed the outcome of the trial.

[*P37]  The Ohio Supreme Court recently reiterated the standard for an
ineffective assistance of counsel claim in *State v. Trimble*, 122 Ohio St.3d 297,
2009 Ohio 2961, 911 N.E.2d 242, holding:

"Reversal of a conviction for ineffective assistance of counsel requires that
the defendant show that counsel's performance was deficient and that the
deficient performance prejudiced the defendant so as to deprive him of a
fair trial.  *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct.
2052, 80 L.Ed.2d 674.  Accord *State v. Bradley* (1989), 42 Ohio St.3d 136,
538 N.E.2d 373, paragraph two of the syllabus."

[*P38]  We must presume that a licensed attorney is competent and that the
challenged action is the product of sound trial strategy and falls within the wide
range of professional assistance.  *Strickland* at 689. Courts must generally refrain
from second-guessing trial counsel's strategy, even where that strategy is
questionable, and appellate counsel claims that a different strategy would have
been more effective.  *State v. Jalowiec*, 91 Ohio St.3d 220, 237, 2001 Ohio 26,
744 N.E.2d 163.  This court has held, "[t]he decision to try the disability charge to
the jury, in and of itself, cannot be construed as anything more than a tactical
one."  *State v. McDonald* (April 27, 2000), Cuyahoga App. No. 75472, 2000 Ohio

App. LEXIS 1850, discretionary appeal not allowed, 90 Ohio St. 3d 1407, 734 N.E.2d 836.

[*P39]  In the instant case, Anderson offers nothing but conjecture to show that the outcome of the trial would have been different if his counsel had prevented the jury from hearing about his prior conviction and criminal history. Therefore, Anderson has failed to demonstrate ineffective assistance of counsel.

 [*P40]  The fourth assignment of error is overruled.

*Anderson*, 2010-Ohio-66 at ¶¶36-40.

The question the Court must address is *not* whether this Court's own application of the *Strickland* test would have yielded a different outcome, as to do so would effectively result in a *de novo* review.  Rather, the Court must answer two questions.  First, was the appellate court's decision contrary to *Strickland* standard?  Alternatively, did the appellate court unreasonably apply that standard?  The answer to both questions is no.  The state court correctly identified the standard governing ineffective assistance of counsel claims.  It also applied the standard reasonably, as federal habeas courts frequently pose the inquiry as whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Finally, the state appellate court's decision – finding Anderson failed to show that the outcome of his trial would have been different had counsel objected to the evidence of prior convictions – is also not an unreasonable determination of the facts in light of the evidence. While Anderson, in his appellate brief, suggests that the evidence against him was weak and that the prior convictions were, therefore, decisive, this Court disagrees.  Two separate witnesses testified independently that Anderson admitted to shooting the victim.  Another witness, Tate, testified that he heard two gunshots, looked up, and saw the victim fall to the ground while Anderson, the only other person in the vicinity, fled the scene.  Therefore, Anderson's fourth

ground for relief is without merit.

## V.  Conclusion

For the foregoing reasons, it is recommended that Anderson's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE


Date: June 29, 2012



### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**